# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHN B. RIDGWAY, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 2:14-CV-105-TLS |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, John B. Ridgway, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). On October 12, 2010, the Plaintiff filed applications for SSI and DIB, alleging disability beginning on July 15, 2009. An ALJ held a hearing on September 24, 2012, at which the Plaintiff was represented by counsel. At the hearing, both the Plaintiff and an impartial vocational expert (VE) testified. On October 26, 2012, the ALJ found that the Plaintiff has the following severe impairments: degenerative joint disease of the bilateral knees, chronic venous stasis of the lower extremities, chronic obstructive pulmonary disease (COPD), and obesity. However, the ALJ ultimately concluded that the Plaintiff is not disabled. The Plaintiff requested review of the ALJ decision, and on February 4, 2014, the Appeals Council denied the Plaintiff's request for review. On April 3, 2014, the Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. This Court has jurisdiction to hear the Plaintiff's action. 42 U.S.C. §§ 405(g), 1383(c).

# BACKGROUND

**A.     Plaintiff's Testimony**

At the hearing, the Plaintiff testified that he is 6 feet tall and weighs 410 pounds. He uses a cane for walking and for balance when standing. The Plaintiff stated he has pain in his knees and his back, but his breathing usually limits him most. He rated his back pain a 9 out of 10, and his knee pain a 7 out of 10. Although the Plaintiff stopped using illegal substances on July 9, 2007, and was undergoing methadone treatment at the time of the hearing, he smokes "[a]bout a pack a day." (R. at 43–44.) The Plaintiff testified that he is out of breath after slight exertion, cannot do much around the mobile home he shares with a friend, and cannot help with outside work. The Plaintiff's friend cleans the mobile home and does the Plaintiff's laundry. The Plaintiff can lift about a gallon of milk, but he also experiences numbness in his hands that causes him to drop objects, such as forks.

The Plaintiff testified that he is able stand for five minutes at a time, but he usually spends most of his time in bed in a reclining position. The Plaintiff testified that his legs swell if they are not elevated, so he tries to keep them at heart level or higher. During the hearing, the Plaintiff stated that his feet were numb after sitting upright in the hearing room for about 25 minutes. He described his legs as red and having rashes on them. When in bed, the Plaintiff does cross-word puzzles and watches television. However, Plaintiff's hands sometimes start to cramp, which requires him to put down the cross-word puzzles.

The Plaintiff stated that he drives himself to the health clinic, and he is able to drive about ten miles before he has hip or back pain. Before the hearing, the Plaintiff had seen Dr. Anna Pacis three times at the health clinic. The Plaintiff's first appointment was in August 2012, which included breathing treatments, and he saw Dr. Pacis two more times before the hearing. The Plaintiff testified

that before Dr. Pacis, his physician was Dr. Bhagwat. The Plaintiff first saw Dr. Bhagwat in 2009, and the second appointment was shortly after that. The Plaintiff testified that he self-medicated between 2009 and 2012. At one point, the Plaintiff was diagnosed with sleep apnea and was supposed to have a sleep study, but he did not follow through with the study because he could not afford it. The Plaintiff also told Dr. Pacis that he could not afford his medication. He estimated that the last time he had health insurance was around 1997. The Plaintiff testified that he last worked in 2005 and he depends on family and friends for money.

### B. Vocational Expert's Testimony

The ALJ asked the VE a series of questions considering a hypothetical claimant with the same age, education, and work experience as the Plaintiff. This hypothetical claimant would be limited to light work at "a maximum of two hours standing and walking in an eight-hour day." (R. at 60.) Further, he was limited to "occasional climbing of ramps and stairs[,] but no ropes, ladders, or scaffolds; occasional" balancing, stooping, kneeling, crouching, and crawling. (*Id.*) The hypothetical claimant must avoid "concentrated exposure" to extreme cold and heat, wetness, and noise, as well as "moderate exposure to breathing air such as dust, fumes, odors, and gases." (*Id.*) Dangerous machinery, slick, even surfaces, and unprotected heights must also be avoided. The VE testified that the Plaintiff's past work did not fit within these parameters, but that several other jobs were available in significant numbers in the state and national economy that would fit. Further, the VE testified that these jobs remained available even if the hypothetical claimant used a cane to walk and to balance when standing.

With the above parameters in mind, the VE testified that the hypothetical claimant would not

be able to work the several jobs identified if he also had to elevate both legs above 12 inches, unless there was an accommodation. The several jobs identified would also cease to be available if the hypothetical claimant were "off task 20 percent of the day" or was limited to "occasional handling and fingering with the upper extremities." (R. at 61–62.)

**C.      ALJ Decision (Five-Step Evaluation)**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § (d)(2)(A).

The Social Security regulations set forth a five-step sequential evaluation process to determine whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The five-step process asks:

> (1) whether the claimant is currently employed,
> (2) whether the claimant has a severe impairment,
> (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling,
> (4) if the claimant does not have a conclusively disabling impairment, whether []he can perform h[is] past relevant work, and
> (5) whether the claimant is capable of performing any work in the national economy.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity (RFC)," which is "an assessment of what work related activities the claimant can perform despite h[is] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004). The claimant has the initial burden of proof in steps one through four, but the burden shifts to the Commissioner for step five. *Id.* at 1000.

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since July 15, 2009, which is the alleged onset date. At the second step. the ALJ found that the Plaintiff had several severe impairments: degenerative joint disease of the bilateral knees, chronic venous stasis of the lower extremities, COPD, and obesity. At step three, the ALJ found that the Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. at 16.) The ALJ directly addressed the listings for 1.02-Major Dysfunction of a Joint, 3.02-Chronic Pulmonary Insufficiency, and 4.11-Chronic Venous Insufficiency. Specifically, for Listing 3.02-Chronic Pulmonary Insufficiency, the ALJ found it had not been met because "there is no evidence of an FEV1 score of 1.65 or less." (R. at 16.)

Because the Plaintiff did not meet any listing, the ALJ assessed the Plaintiff's RFC. The ALJ found that the Plaintiff has the RFC "to perform light work" because he is

> able to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit for six hours in an eight hour workday, except: the [Plaintiff] is able to stand and/or walk for two hours in an eight hour workday, would require a cane for walking or balancing when standing, is unable to climb ladders, ropes or scaffolds, may occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl[;]must avoid concentrated exposure to extreme temperatures, wetness and noise, moderate exposure to pulmonary irritants such as dust, fumes and odors[,] and all exposure to slick and uneven surfaces and hazards such as dangerous machinery and unprotected

heights.

(R. at 16–17.) Although the ALJ determined that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, the Plaintiff's statements concerning the "intensity, persistence and limiting effects" of the symptoms were not credible to the extent they contradicted the RFC assessment. (R. at 17.) The ALJ also found the Plaintiff "less than fully credible" given that he "has sought very little treatment for his 'severe' impairments." (R. at 19.) Further, the ALJ gave little weight to the opinions of Dr. Pacis, the Plaintiff's treating physician, because he did not find her opinions supported by the record. Instead, the ALJ gave "great weight" to clinical findings and opinions of the non-treating physicians, who were state agency medical consultants that examined the Plaintiff. (R. at 18.)

At step four, the ALJ relied on the VE's testimony and found the Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that in light of the Plaintiff's age, education, work experience, and RFC, the Plaintiff is able to perform jobs in the national economy that exist in significant numbers. Thus, the ALJ held that the Plaintiff was not disabled from July 15, 2009, through the date of his decision.

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ weighs the evidence, resolves material conflicts, makes independent findings of fact, and disposes of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.* The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)**.**

## ANALYSIS

The Plaintiff argues that the ALJ erred in his evaluation of whether he satisfied the criteria

in the listing for chronic pulmonary insufficiency. The Plaintiff also takes issue with the ALJ's assessment of his credibility, in which the ALJ questioned the severity of his symptoms and his limited medical treatment. Further, the Plaintiff argues that the ALJ's RFC assessment did not adequately address his need to elevate his legs. The Court agrees with the Plaintiff and remand is warranted.

**A.     Pulmonary Function Test**

The Plaintiff's first argument challenges the ALJ's decision at step three, where the ALJ found that the Plaintiff did not meet Listing 3.02-Chronic Pulmonary Insufficiency because "there is no medically documented evidence of an FEV1 score of 1.[5]5 or less."[1] (R. at 16.) This Court disagrees with that conclusion because the ALJ did not consider the pulmonary function test results. "Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1). During a pulmonary function test, a "spirograph" is used to measure a person's forced expiratory volume in one second (FEV1), and measurements are taken both before and after the person inhales a bronchodilator. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.00E. If a person with COPD has an FEV1 at a particular value, the person automatically qualifies for benefits. *Eskew v. Astrue*, 462 Fed. App'x 613, 615 (7th Cir. 2011) (citing 20 C.F.R. Pt. 404, Subpt. P, App.1, 3.02A).

On November 18, 2010, the Plaintiff had his pulmonary function test. The Plaintiff's height

---

[1] The ALJ's opinion used the incorrect value given the Plaintiff's height. The relevant table for Listing 3.02 required the Plaintiff to have a score of 1.55 or less, not 1.65 or less.

that day was measured at 71 inches. Accordingly, an FEV1 equal to or less than 1.55 would meet Listing 3.02A. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.02A, Table 1. The Plaintiff's highest pre-bronchodilator FEV1 was 2.28, and his highest post-bronchodilator FEV1 was 1.08. The technician noted that the Plaintiff understood the test instructions and exerted maximal effort. Based on these results, the pre-bronchodilator test showed that the Plaintiff did not meet the listing, but his post-bronchodilator test met the listing.

The Plaintiff argues that the ALJ should have only looked at the post-bronchodilator FEV1, while the Commissioner argues that the highest FEV1 is determinative, regardless of which test produced it. Although the regulations state that "[t]he highest values of the FEV1 and FVC, whether from the same or different tracings, should be used to assess the severity of the respiratory impairment," 20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.00E, courts have interpreted this language differently. Some courts, including the Seventh Circuit, have stated that "only the highest post-bronchodilator result is used to assess the severity of the respiratory impairment." *Eskew*, 462 Fed. App'x at 615 (holding that the ALJ correctly ignored the "inapplicable" pre-bronchodilator result that would have met the listing, and instead used the highest post-bronchodilator result that did not meet the listing); *Embrey v. Astrue*, Civil Action No. TMD 10-2680M, 2012 WL 909219, at *3 (D. Md. Mar. 13, 2012). In contrast, other courts have adopted the Commissioner's present position. *Becham v. Comm'r of Soc. Sec.*, No. 6:11-cv-1601-Orl-GJK, 2013 WL 935529, at *7 (M.D. Fla. Mar. 11, 2013) (using the pre-bronchodilator results that were higher than the post-bronchodilator results); *Belton v. Comm'r of Soc. Sec.*, No. 4:11-cv-21, 2012 WL 4459033, at *3 & n.4 (W.D. Va. May 30, 2012) (stating that the regulations mandate using the larger of the readings before and after the use of a bronchodilator); *Uhlig v. Apfel*, No. 97 Civ. 7629SHS, 1999 WL 350862, at *7 & n.3

(S.D.N.Y. June 2, 1999) ("The highest values of the FEV-1, whether pre- or post-bronchodilator, should be used to assess the severity of the respiratory impairment. In the usual case, it is the post-bronchodilator values which are used.").

Although *Eskew* is not completely identical to the Plaintiff's situation, as there the bronchodilator functioned as expected and the plaintiff's FEV1 increased after it was administered (the opposite occurred here), the rule articulated in *Eskew* applies equally in both situations. 462 Fed. App'x at 615. Under the regulations, a post-bronchodilator test occurs only if the patient meets the threshold of having a pre-bronchodilator FEV1 value that is "less than 70 percent of the predicted normal value." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.00E. The bronchodilator is administered to relieve bronchospasm and improve ventilatory function, and the post-bronchodilator test measures this change. *Id.* Therefore, it is logical that once a post-bronchodilator test is administered, those FEV1 values should be the controlling results. A post-bronchodilator FEV1 being lower than a pre-bronchodilator score may raise suspicions, *Johnson v. Astrue*, Cause No. 2:11-CV-260 JD, 2012 WL 4471607, at * 9 (N.D. Ind. Sept. 26, 2012) ("It is therefore exceedingly strange that the claimant's exhale volume decreased by 92 percent after a bronchodilator was applied. The implication may be that her second exhale was something less than an honest effort."); however, it also may indicate how well a person responds to medication, *Belton v. Astrue*, No. 4:11CV00021, 2012 WL 1354031, at *4 (W.D. Va. Apr. 16, 2012), *adopted by* 2012 WL 4459033, at *1 (W.D. Va. May 30, 2012).

In light of the evidence that the Plaintiff had a post-bronchodilator FEV1 measured at 1.08 (R. at 18, 326), the ALJ's conclusion that "there is no medically documented evidence of an FEV1 score of 1.[5]5 or less" is not supported by the evidence. (R. at 16.). "Both [pre- and post-bronchodilator] measurements produce FEV1 values, but only the highest post-bronchodilator result

is used to assess the severity of the respiratory impairment." *Eskew*, 462 Fed. App'x at 615. Because this Court remands on that basis, it does not decide whether the ALJ's analysis was perfunctory. However, the Court observes that the ALJ's one-sentence discussion of Listing 3.02, which provided no explanation of the test's results, does not offer any insight. *Barnett*, 381 F.3d at 668; *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("Without even a mention, we are left to wonder whether the [test] was even considered. Here the ALJ should have discussed not only the results of the [test], but also whether those results meet the requirement of [the] listing . . . .").

**B.  Plaintiff's Credibility**

The Plaintiff also argues that remand is appropriate because the ALJ improperly drew negative inferences from his limited medical treatment. An ALJ's credibility determination is generally entitled to deference. *Craft*, 539 F.3d at 678. The credibility determination "must contain specific reasons for the finding . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (internal quotation marks omitted). An ALJ errs when his credibility finding is based on an observation or argument that is unreasonable or unsupported. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ found that the Plaintiff saw "his treating physician twice in 2009 and three times in August of 2012. His primary course of treatment is methadone therapy." (R. at 19.) The social security regulations prohibit an ALJ from weighing gaps in treatment records without first determining the reason for those gaps. SSR 96–7p, 1996 WL 374186, at *7–8 (July 2, 1996) ("[T]he

adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."); *see also Thomas v. Colvin*, 534 Fed. App'x 546, 551 (7th Cir. Aug. 13, 2013) ("[A]n ALJ must consider reasons for a claimant's lack of treatment (such as an inability to pay) before drawing negative inferences about the claimant's symptoms.") (citing *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013)).

Despite noting the Plaintiff's few appointments with his treating physicians, the ALJ made no effort to explain this, except to comment that "[t]he record indicates that the [Plaintiff] has sought very little treatment for his 'severe' impairments." (R. at 19.) This contributed to the ALJ finding the Plaintiff "less than fully credible." (R. at 19.) The Plaintiff's hearing testimony shed some light on the reasons for his infrequent treatment, as he testified he last had health insurance in 1997 and has not worked since 2005. Further, he testified that he survives on money from family and friends, and evidence in the record showed he has forgone treatments because of an inability to pay.

The ALJ cited the Plaintiff's limited treatment history as the first reason supporting his credibility determination. The ALJ's complete failure to discuss the Plaintiff's financial limitations here, or anywhere else in the opinion, shows that the ALJ improperly drew an inference about the Plaintiff's limited medical treatment by ignoring the explanations provided by the Plaintiff. Although the Commissioner attempts to salvage this point by noting that the ALJ next commented on the limited evidence supporting the Plaintiff's alleged limitations, this does not account for the Plaintiff's lack of insurance and income. Limited evidence is also indicative of the Plaintiff's stated lack of money and insurance. In this instance, remand is appropriate and will offer the ALJ an

opportunity to develop a complete and more accurate record as to the Plaintiff's treatment records during the relevant period.

### C. Issues Related to Plaintiff's Legs

On remand for the issues discussed above, the ALJ should also revisit his determinations regarding how the Plaintiff's leg conditions affect his claims. The Plaintiff argues that the ALJ's RFC assessment failed to adequately address the Plaintiff's need to elevate his legs. The ALJ found that the Plaintiff did not need to elevate his legs at all during the day, which was consistent with the opinions of two state medical consultants. The ALJ gave these two opinions great weight, and discounted the Plaintiff's statements and the views of Dr. Pacis, his treating physician.

First, the ALJ discounted the Plaintiff's testimony that "he needs to elevate his feet to chest height for [25 percent] of the day" because the ALJ found "no evidence contained in the record to support" such testimony. (R. at 19.) The ALJ determined this even though he also found that the Plaintiff has chronic venous insufficiency of the lower extremities, which causes leg swelling. Based on these symptoms, Dr. Pacis instructed the Plaintiff to elevate his legs for 20 to 30 percent of a workday.

Second, rather than directly addressing this evidence, the ALJ discounted the opinions of Dr. Pacis because he found "they are not supported by the record." (R. at 20.) An ALJ must "'articulate at some minimal level [her] analysis of the evidence' to permit an informed review. *Zurawski,* 245 F.3d at 888 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Certainly, a plaintiff "is not entitled to benefits merely because [his] treating physician said [he] is disabled or unable to work," *Rogers v. Barnhart*, 446 F. Supp. 2d 828, 853 (N.D. Ill. 2006) (citing *Dixon v. Massanari*,

270 F.3d 1171, 1177 (7th Cir. 2001)), and "once contrary, competent medical evidence contradicting that of the treating physician is introduced the ALJ no longer gives primacy to the treating physician's opinions and the treating physician's evidence 'is just one more piece of evidence for the administrative law judge to weigh.'" *Id.* (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). However, when a treating physician's opinion is not entitled to controlling weight, the ALJ must still consider the length of treatment relationship and frequency of examination; nature and extent of the treatment relationship; supportability; consistency with the record as a whole; and specialization. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

The ALJ addressed the checklist factors by noting that Dr. Pacis may be "not completely familiar" with the Plaintiff's conditions because she only saw him three times, with the first appointment occurring in August 2012; but the ALJ otherwise only commented on the "little objective evidence" and "the limited amount of medical records." (R. at 20.) Further, the ALJ stated that a physical consultative examination shows that the Plaintiff "has normal grip, strength, dexterity and range of motion of all joints." (R. at 20.) This incomplete application of the checklist factors does not permit an informed review. *See, e.g.*, *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (reversing where the ALJ did not explicitly address the checklist of factors, the proper consideration of which may have caused the ALJ to accord greater weight to the doctor's opinion); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing the ALJ's decision for failing to address the "required checklist of factors" and remanding with instructions to afford the plaintiff's treating psychiatrist's opinion controlling weight). The weight attributed to Dr. Pacis's opinions was also intertwined with the ALJ's determination that the Plaintiff's limited treatment made him less credible, as he ignored the Plaintiff's testimony when discussing Dr. Pacis's opinions. *Zurawski*, 245

F.3d at 888 ("[A]n ALJ may not ignore an entire line of evidence that is contrary to her findings.") (internal quotation marks and citation omitted). As discussed earlier, the ALJ's failure to consider the reasons for the lack of treatment was improper, and may affect how the ALJ views Dr. Pacis's opinions.

## CONCLUSION

For the reasons stated above, the decision of the ALJ is REVERSED and REMANDED for proceedings consistent with this Opinion.

SO ORDERED on April 19, 2016.

                                               s/ Theresa L. Springmann
                                               THERESA L. SPRINGMANN
                                               UNITED STATES DISTRICT COURT